IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD DONALD JONES, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:13-CV-1721-N |
| | § | |
| WELLS FARGO BANK NA, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

This Order addresses Defendant JPMorgan Chase Bank NA's ("JPMorgan") motion to dismiss, and alternative motion for leave to convert to second motion for summary judgment [56]; Defendant Wells Fargo Bank NA's ("Wells Fargo") second motion for summary judgment [57]; Plaintiff Richard Donald Jones Jr.'s motion to strike JPMorgan's motion to dismiss [63]; and Plaintiff Jones's motion to strike Wells Fargo's second motion for summary judgment [65]. The Court denies Jones's motions to strike, grants JPMorgan's motion to dismiss, and grants in part and denies in part Wells Fargo's second motion for summary judgment.[1]

---

[1]Because this Order dismisses all claims against JPMorgan, the Court also denies JPMorgan's motion for leave to file initial disclosures [75] as moot.

## I. HISTORY OF THE DISPUTE

### A. *Creation of the Relevant Trusts*

Jones brings claims against JPMorgan and Wells Fargo for their alleged mismanagement of a series of trusts, of which Jones was a beneficiary. The occurrences giving rise to the trusts are briefly recounted here. Sweetie J. Boyle, Jones's maternal grandmother, became mentally incapacitated and in 1983, a trust was created to manage her assets. JPMorgan's predecessor in interest[2] served as trustee of that trust. In 1984, when Sweetie J. Boyle was adjudged incompetent, Jones's mother – Mary Catherine Jones – was appointed as guardian of Boyle's person and estate. Mary Catherine Jones subsequently proposed and received approval for a gifting plan for Boyle's estate.

After Mary Catherine Jones died, Plaintiff Jones proposed an additional gifting plan for the Boyle estate in 1994. When Boyle died in 1996, her will named JPMorgan's predecessor in interest as executor of her estate. The gifting plans and the estate of Sweetie J. Boyle created various trusts, four of which form the basis for Jones's claims in this action. The four relevant trusts are (1) the Richard D. Jones Irrevocable Trust, Trust Account No. 010515087500 (the "1988 Trust"); (2) the Richard Jones Irrevocable Trust, Trust Account No. 010515092600 (the "House Trust"); (3) the Mary C. Jones Family Trust for benefit of Richard Jones (formerly known as Sweetie J. Boyle Estate), Trust Account No.

---

[2]JPMorgan itself never served as a trustee for the relevant trusts in this action. Rather, JPMorgan's predecessors in interest committed the alleged actionable conduct that serves as the basis for Jones's claims against JPMorgan. JPMorgan does not dispute that it is in privity with its predecessors in interest for the purposes of Jones's claims. Thus, the terms "JPMorgan" and "JPMorgan's predecessor in interest" are used interchangeably.

010515119200 (the "Estate Trust"); and (4) the Mary Jones Family Trust for benefit of Great Grandchildren, Trust Account No. 010515119203 (the "Great Grandchildren Trust"). JPMorgan was the trustee of the 1988 Trust, the House Trust, and the Estate Trust from their creation until April 2001. Wells Fargo was the trustee of the 1988 Trust, the House Trust, and the Estate Trust from April 2001 until their termination on December 31, 2010. Wells Fargo was also the trustee of the Great Grandchildren Trust from its creation in 2003 until its termination on December 31, 2010.

### B. The House Trust and Corresponding Litigation

In or about 1995, Jones identified a house (the "House") that he wanted to purchase. He alleges that at the urging of JPMorgan, he permitted JPMorgan, as trustee of the House Trust, to purchase and hold the House for his benefit. The House proved a bad investment, however, and a number of substantial problems and necessary repairs soon came to light. As a result of these problems, in November 1999 JPMorgan brought suit against the inspector it had hired to perform a prepurchase inspection of the House (the "Bastrop County Litigation"). In September 2008, JPMorgan attempted to assign the claims in the Bastrop County Litigation to Jones, though this effort proved unsuccessful. Wells Fargo subsequently nonsuited the Bastrop County Litigation on April 15, 2009.[3]

Unrelated to the Bastrop County Litigation, the House was struck by lightning in May or June of 2005. Jones received a check from his insurance company in the amount of

---

[3]Jones is unclear as to exactly how or when Wells Fargo came to control the claims in the Bastrop County Litigation. *See* First Am. Compl. ("FAC") ¶¶ 34–39 [53].

ORDER – PAGE 3

$25,988.28. Jones alleges that Wells Fargo convinced him to indorse the check to Wells Fargo to be held as part of the House Trust for his benefit. Jones further alleges that Wells Fargo did not use the funds to repair the house, and that upon the termination of the House Trust, the insurance proceeds were not returned to him.

Litigation also arose in relation to the House Trust in 2007, when Wells Fargo sued to terminate the House Trust (the "Termination Suit"). Prior to the initiation of the Termination Suit, Wells Fargo informed Jones that it would be using House Trust funds to pay for the suit. Jones alleges that in contrast to Wells Fargo's representations that the suit would cost only $6,000.00 or $7,000.00, the resulting trial occasioned over $100,000.00 in attorneys' fees that were paid for out of the House Trust. The trial to terminate the House Trust began in March 2009 and concluded in June 2009. Jones alleges that in the course of the trial, Wells Fargo acknowledged that it had initiated the Termination Suit out of its own best interests, not Jones's best interests. Further, Jones alleges that in addition to using House Trust funds to pay its own legal fees, Wells Fargo was using House Trust funds to pay JPMorgan's legal fees in connection with JPMorgan's litigation against Jones that was occurring simultaneously in Midland County. Jones alleges he did not discover the payments to JPMorgan until June, 2009.

### C. Jones's Allegations Concerning Trust Management

Jones also alleges that Wells Fargo failed to properly explain to Jones certain financial options available to him with regards to the trusts. For instance, Jones claims that from 2001 until 2010, Wells Fargo refused to expend funds from the House Trust to benefit Jones,

falsely claiming there were insufficient funds to pay for Jones's requests. Jones alleges that in 2009, he discovered the House Trust and the 1988 Trust could have been legally combined to help pay for repairs to the House, but that Wells Fargo never explained this option to him. As a result, Jones alleges a number of problems with the House went unrepaired and he suffered damages as a result.

Jones makes a number of allegations against both Wells Fargo and JPMorgan stemming from each's management of the trusts. For instance, Jones alleges both Defendants mismanaged the cost basis of various stocks held by the House Trust, and that he suffered a loss when the trusts were eventually terminated. According to the Complaint, both Defendants generally mismanaged the trust assets, and "[t]he assets of the 1988 Trust, the House Trust, the Estate Trust, and the Great Grandchildren's Trust did not grow as much as they would have under prudent management." First Am. Compl. ("FAC") ¶ 97 [53]. Jones alleges further that both Defendants exhibited partiality toward Angela Militello, one of Jones's co-beneficiaries, because their trusts started with the same amount of funds, but when terminated were of different values.

### D. Failure to Convey Title to Mineral Rights

The Complaint also states that JPMorgan's predecessor in interest failed to convey title to certain oil and gas producing properties to which Jones was entitled. Jones alleges Wells Fargo similarly failed to make the necessary conveyances after it took over as trustee. Jones claims that he did not discover these claims until recently, when a number of oil and gas companies mailed him correspondence inquiring into his interest in royalties contracts.

### E. Procedural History of the Motions

Jones originally filed this action in Texas state court on March 28, 2013. Wells Fargo removed the action to this Court on May 6, 2013. Both Defendants filed motions for summary judgment asserting limitations and res judicata. *See* Wells Fargo's Mot. Summ. J. [17]; JPMorgan's Mot. Summ. J. [22]. On April 10, 2014, the Court approved the withdrawal of Jones's counsel and entered an amended scheduling order. *See* Order Amending Scheduling Order and Approving Withdrawal, Apr. 10, 2014 [29]. The amended scheduling order reset trial to June 15, 2015, and provided that all deadlines in the original scheduling order were to be recalculated from the new trial date. *Id.* However, the amended scheduling order provided that as to dates in the original scheduling order that had already passed, "Plaintiff may separately seek extensions, and defendants shall have the right to oppose such request when made . . . ." *Id.* As of the entry of the amended scheduling order on April 10, 2014, the deadline to file motions had expired. *See* Scheduling Order [10] (requiring all motions to be filed ninety days before the original trial date of June 2, 2014).

On June 20, 2014, the Court granted Jones a ninety-day extension of time to respond to Defendants' initial motions for summary judgment. *See* Order Granting Mot. Extension of Time, June 20, 2014 [33]. Before briefing on the motions for summary judgment concluded, Jones filed a motion for leave to file an amended complaint. *See* Pls.' Mot. Leave [37]. Acknowledging that many of the claims in his state court petition were either time barred or barred by res judicata, Jones, now with new counsel, sought to amend his pleadings to assert viable claims. The Court deferred consideration of the motion for leave, granted

JPMorgan's motion for summary judgment, *see* Sept. 30, 2014 Order [48], and granted in part and denied in part Wells Fargo's motion for summary judgment, *see* Sept. 30, 2014 Order [49]. However, the Court also granted Jones leave to file his amended complaint. *See* Electronic Order, Oct. 14, 2014 [52].

Defendants filed motions in response to the amended complaint, which are now pending before the Court. JPMorgan seeks judgment on the pleadings pursuant to Rule 12(c), or in the alternative, summary judgment. Wells Fargo seeks summary judgment, or in the alternative, judgment on the pleadings. In addition to responding to the motions on the merits, Jones filed motions to strike, asserting various procedural defects that the Court will address below.

## II. JONES'S MOTIONS TO STRIKE

Jones moves to strike both Defendants' motions, arguing they are procedurally defective. The Court denies both of Jones's motions.

### A. The Court Declines to Strike JPMorgan's Motion

Jones first argues that JPMorgan's motion is untimely under the Amended Scheduling Order, which did not reset filing deadlines that had already passed. Although Jones is technically correct that the deadline to file "all motions" passed on March 4, 2014, ninety days prior to the original trial date, the Court declines to strike on this basis. A number of routine motions were filed after the entry of the Amended Scheduling Order, including Jones's own motions to extend and for leave to file an amended complaint. It would command an absurd result for the Court to foreclose the filing of all motions based on the

original trial date when Jones was granted both a lengthy extension to respond to Defendants' original motions, and leave to file an amended complaint. Accordingly, to the extent necessary, the Court grants JPMorgan leave to file its motion for judgment on the pleadings beyond the deadline set in the original scheduling order.[4]

### B. The Court Declines to Strike Wells Fargo's Motion

Jones moves to strike Wells Fargo's motion as late in violation of the scheduling order and as deficient under Local Rule 56.3(a)(1). In addition, he asserts that Wells Fargo's motion constitutes an impermissible "second bite at the apple." Pl.'s Mot. Strike Wells Fargo's Mot. Summ. J. 3–5 [65]. For the same reasons discussed above, the Court denies Jones's motion to strike for untimeliness.

Local Rule 56.3(a)(1) requires motions for summary judgment to "on the first page, under the heading 'summary,' state concisely the elements of each claim or defense as to which summary judgment is sought . . . ." N.D. TEX. L.R. 56.3(a)(1). Jones asserts that because of this deficiency, he has been unable to prepare a thorough response to the motion for summary judgment. Pl.'s Mot. Strike Wells Fargo Mot. 6. The Court declines to strike the motion on this basis. Local Rule 56.3(a)(1) essentially requires movants to provide a brief outline of their motion. The rule thus enables both the parties and the Court more quickly to orient themselves in the motion and identify the general nature of the relief sought. The rule in no way changes the substance of the movant's arguments. The Court finds it

---

[4]Jones also complains that if the Court were to construe JPMorgan's motion as one for summary judgment, it would violate Local Rule 56.3(a)(1). Because the Court construes it as one for judgment on the pleadings, the Court need not address this argument.

difficult to see how Jones's ability to respond to the motion could have been prejudiced by Wells Fargo's failure to comply with the rule. Thus, pursuant to Local Rule 83.1, the Court declines to strike Wells Fargo's motion on this basis. *See* N.D. TEX. L.R. 83.1 ("Notwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious.").

Finally, as to Jones's "second bite at the apple" argument, which he raises under Local Rule 56.2(b), the Court also declines to strike Wells Fargo's motion. Local Rule 56.2(b) provides "[u]nless otherwise directed by the presiding judge, or permitted by law, a party may file no more than one motion for summary judgment." N.D. TEX. L.R. 56.2(b). Wells Fargo's second motion for summary judgment was necessitated because the Court exercised its discretion in permitting Jones to clarify the factual bases for a number of his claims. Accordingly, the Court grants Wells Fargo leave to file a second motion for summary judgment.

### III. JPMORGAN'S MOTION FOR JUDGMENT ON THE PLEADINGS

JPMorgan moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting primarily that the claims are barred by applicable statutes of limitations. Anticipating this defense, Jones has pled the discovery rule and argues he could not have reasonably discovered his claims until within the applicable limitations periods.

### A. The Rule 12(c) Legal Standard

When faced with a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings,[5] a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(c) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

---

[5]Rule 12(b)(6) motions and Rule 12(c) motions are subject to the same standard. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209–10 (5th Cir. 2010).

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a [12(c)] dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a [12(c) motion for judgment on the pleadings], a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. The Texas Discovery Rule

Courts sitting in diversity apply state limitations laws. *See Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1368 (5th Cir. 1994). In Texas, a

ORDER – PAGE 11

Defendant moving for summary judgment based on limitations "must conclusively establish the date on which . . . the cause of action accrued." *Villareal v. Wells Fargo Brokerage Servs., LLC*, 315 S.W.3d 109, 117 (Tex. App. – Houston [1st Dist.] 2010, no pet.). Ordinarily, "a cause of action accrues . . . when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). "In most cases, a cause of action accrues when a wrongful act causes a legal injury, *regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur*." *Id.* (emphasis added).

In Texas, "the discovery rule may defer accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Barker v. Eckman*, 213 S.W.3d 306, 311–12 (Tex. 2006). However, application of the discovery rule is typically restricted to exceptional cases in order avoid defeating the purposes of statutes of limitations. *See S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996) (reiterating that exceptions to the legal injury rule should be "narrowly drawn"); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996) ("The discovery rule is a limited exception to strict compliance with the statute of limitations."). Indeed, the discovery rule may only apply if the nature of the injury is inherently undiscoverable, and the injury itself is objectively verifiable. *Barker*, 213 S.W.3d at 312. If the discovery rule applies, a defendant moving for summary judgment bears the dual burden of establishing both when the cause of action accrued, and that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have

discovered, his injury. *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 622 (Tex. App. – Houston [14th Dist.] 2009, pet. denied).

In Texas, a fiduciary's misconduct is often held to be inherently undiscoverable. *See S.V.*, 933 S.W.2d at 8. This is because "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *Id.* However, while a person to whom a fiduciary duty is owed is not obligated to make diligent inquiry into the fiduciary's conduct, "when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship." *Id.* Thus, a claim against a fiduciary arises "when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury." *Villareal*, 315 S.W.3d at 119. Although the date a claimant knew or should have known of an injury is generally a fact question, the start of the limitations period may be determined as a matter of law if reasonable minds could not differ as to when the claimant knew of the injury. *Id.*

One case is of particular relevance to the issues before the Court. In *Villareal*, beneficiaries of a trust brought suit against both the trustee and the bank with which the trustee had established a brokerage account, alleging breaches of fiduciary duties based on imprudent investments. *Id.* at 112–13. The bank-defendant moved for summary judgment based on limitations, and the plaintiffs asserted the discovery rule preserved their claims. *Id.* at 114, 115. Finding the plaintiffs' claims accrued when the trustee should have known of his claim against the bank, *id.* at 118, the court held the trustee knew or should have known of his claims against the bank when he was provided with account statements showing a

marked decline in the value of the trust accounts. *Id.* at 119–20. Even assuming the bank owed the trustee a fiduciary duty, the court held the trustee's knowledge of the depleted account funds, as well as his direction to the bank to invest the funds elsewhere, would at a minimum have caused a reasonable trustee to inquire further into the nature of the investments and their propriety. *Id.* at 119–20. Thus, when evaluating limitations and discovery rule arguments, the Court must determine whether Jones was on notice of facts that would have caused a reasonable person to investigate further into potential improprieties.

### C. Jones Asserts Claims Against JPMorgan that Are Time Barred

Jones brings claims under a number of different legal theories, including breach of fiduciary duty, breach of contract, and violation of the Texas Trust Code. At most, Jones's claims carry a four-year statute of limitations. *See* TEX. CIV. PRAC. REM. CODE. ANN. § 16.004; 16.051. Jones's claims are thus time barred if they accrued before March 28, 2009, four years prior to the date Jones filed his petition in state court.

**1. Jones's Claim for Unjust Enrichment is Time Barred.** – Jones asserts a claim for unjust enrichment based on JPMorgan's alleged receipt of legal fees paid for by Wells Fargo out of trust account funds. Unjust enrichment claims in Texas are subject to a two year statute of limitations. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007). Jones alleges that he discovered Wells Fargo's payments to JPMorgan in June 2009. FAC ¶¶ 67–68. Thus, Jones's claim for unjust enrichment accrued, at the latest, in June 2009 and was time barred no later than June 2011. Accordingly, the Court grants JPMorgan judgment on the pleadings as to Jones's unjust enrichment claim.

ORDER – PAGE 14

### 2. Jones's Claims Based on Failure to Transfer Mineral Interests Are Time Barred.

– Jones alleges that JPMorgan failed to convey certain oil and gas producing properties into Jones's name on the termination of trusts in which the properties had been held.  FAC ¶ 104. As JPMorgan ceased functioning as a trustee in 2001, the conduct supporting these claims occurred, at the latest, in 2001.  Jones asserts that only within the last two years has he discovered his interests in certain parcels of land that JPMorgan failed to convey to Jones. *See id.* ¶¶ 104–119.

In granting JPMorgan's previous motion for summary judgment based on limitations, the Court noted that Jones had been involved in litigation with JPMorgan concerning its failure to convey certain oil and gas interests to Jones.  *See* Sept. 30, 2014 Order 4–5 (citing Counterclaim and Original Petition, Feb. 17, 2000, *in In the Matter of Trusts Created for the Benefit of Richard Donald Jones, Jr. and Angela Starrett*, No. CV-42520, the 238th District Court of Midland County (the "Midland County Litigation"), *in* Def.'s Mot. Summ. J. App. 523 [23]).[6]  Jones's counterclaim in the Midland County Litigation makes a number of allegations against JPMorgan concerning its failure to convey certain mineral interests.  *See* Counterclaim and Original Petition, Feb. 17, 2000, *in* the Midland County Litigation, *in* Def.'s Mot. Summ. J. App. 523–525.  Jones also alleged in that litigation that he had hired an oil and gas expert to investigate the various interests to which he was entitled.  *Id.* at 523. Thus, the Court holds that as of February 17, 2000, when he filed his counterclaim, Jones

---

[6]The Court may refer to the cited counterclaim in the Midland County Litigation without converting JPMorgan's motion into one for summary judgment because it is a publicly available document.  *See Connick*, 15 F.3d at 1343 n.6.

was on notice of facts that would have caused a reasonably prudent person to investigate the extent to which JPMorgan had failed to convey other oil and gas producing properties. Accordingly, Jones cannot now rely on the discovery rule to revive claims directly related to those he began pursuing over a decade ago.

**3. Jones's DTPA Claim is Time Barred.** – Jones asserts a claim under the Texas Deceptive Trade Practices Act ("DTPA"). Jones's DTPA claim "is only based on the failure to convey title to oil & gas properties previously held in trust for the benefit of Plaintiff Jones . . . ." FAC ¶ 152. As discussed above, Jones was, at a minimum, on notice of facts that would have led a reasonably prudent person to investigate claims based on failure to convey oil and gas producing properties as of, at the latest, February 17, 2000. DTPA claims are subject to a two-year statute of limitations. *See Gonzales v. Southwest Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 55 (Tex. 2013). Accordingly, Jones's DTPA claim is time barred.

**4. Jones's Claim Based on Mismanagement of Tax Consequences is Time Barred.** – Jones asserts that JPMorgan is liable for loss to the trust accounts that resulted from "mismanaging the cost basis of the stocks transferred from Plaintiff Jones's trusts to Plaintiff Jones individually upon the December 31, 2010 termination of the trusts." FAC ¶ 91. Jones asserts claims based on this conduct, which occurred no later than 2001 when JPMorgan ceased functioning as trustee, did not accrue until December 31, 2010, when Wells Fargo transferred the trusts to Jones. Pl.'s Resp. JPMorgan Mot. Dismiss 19 [64]. This argument defies credulity. No later than November 17, 2008, Jones was asserting claims against JPMorgan for, among other things, failing to maintain and manage AT&T stock held in the

trusts, failing to do proper tax planning on behalf of the estate, and failing to properly administer the estate to prevent an excessive tax.  *See* Counterclaim & Am. Pet. of Richard D. Jones, Jr., *in In the Matter of the Estate of Sweetie J. Boyle, Deceased*, No. P11,674, County Court of Midland County, Texas (the "Probate Action"), *in* Def.'s Mot. Summ. J. App. 398–399, 404 [23-4].  As of that date, Jones was asserting claims against JPMorgan based extensively on alleged failures to properly manage tax consequences related to stocks held by the trusts.  Accordingly, even if Jones was not then attempting to assert the very same claims he is now, he was at the least on notice of facts that would have compelled a reasonable person to investigate further into other potentially actionable conduct. Accordingly, Jones's claims based on failure to manage the tax basis of stocks held in trust are time barred.

*5. Jones's Claims Based on Alleged Favoritism Are Time Barred.* – Jones alleges JPMorgan exhibited favoritism toward Jones's co-beneficiary, Angela Militello.  Again, Jones alleges this claim did not accrue until December 31, 2010, when the trusts were terminated and their assets transferred to Jones.  And, as with the other claims against JPMorgan, the actionable conduct took place no later than April of 2001, when JPMorgan ceased functioning as trustee.

Claims based on this alleged conduct are time barred.  No later than November 17, 2008, Jones asserted a claim against JPMorgan for "protecting the assets of one beneficiary to the detriment of another similarly situated beneficiary."  Counterclaim & Am. Pet. of Richard D. Jones, Jr., *in* the Probate Action, *in* Def.'s Mot. Summ. J. App. 399.  Thus, no

ORDER – PAGE 17

later than November 17, 2008, Jones was asserting claims against JPMorgan for biased treatment of beneficiaries. At a minimum, he was then on notice of facts that would have led a reasonably prudent person to investigate the extent to which co-beneficiaries were being treated differently. Accordingly, Jones's claim against JPMorgan for biased treatment of Angela Militello is time barred.

### D. JPMorgan Is Entitled to Dismissal of Jones's Remaining Claim

JPMorgan seeks judgment as to Jones's claim for breach of fiduciary duty based on JPMorgan's alleged failure to obtain a final accounting of Sweetie Boyle's Estate. Jones's claim based on this conduct is captioned as one for "Breach of Fiduciary Duty as Executor of Estate of Sweetie J. Boyle." FAC § G. However, the text of the claim itself alleges "Defendant JP Morgan Chase . . . never obtained judicial approval of a final accounting *in its capacity as guardian of the Estate of Sweetie J. Boyle* at any time . . . ." FAC ¶ 93 (emphasis added). Thus, because the complaint does not allege any conduct by JPMorgan in its capacity as executor, the Court considers only whether JPMorgan is entitled to judgment as to Jones's claim against JPMorgan in its capacity as guardian. *Cf. Wilske v. Granholm*, 2008 WL 4852678, at *2 (E.D. Mich. 2008) (citing *Hoffman v. Halden*, 268 F.2d 280, 303–04 (9th Cir. 1959), *overturned on other grounds by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962)) (discussing general rule that the substance of the complaint, not its captions, determines the complaint's statement of the claim).

Jones's claim for JPMorgan's failure to obtain judicial approval of a final accounting in its capacity as guardian of the Boyle Estate fails because JPMorgan did obtain judicial

approval of a final accounting. On September 24, 1997, the County Court-At-Law for Midland County, Texas entered an order closing the guardianship of the estate for Sweetie J. Boyle. *See* Order Closing Guardianship of Estate, *in In the Guardianship of Sweetie J. Boyle, an Incapacitated Person*, No. 8963, County Court-At-Law of Midland County, Texas, *in* Def.'s Mot. Summ. J. App 280 [23-3]. In that Order, the court found that "the Account for Final Settlement of Guardian of the Estate has previously been approved . . . ." *Id.* Jones does not challenge this conclusion, but only asserts that he states a claim against JPMorgan in its capacity as executor of the estate for Sweetie J. Boyle. *See* Pl.'s Resp. JPMorgan Mot. Dismiss 21. As discussed, Jones's first amended complaint does not include any allegations against JPMorgan for its failure to obtain a final accounting in its capacity as executor. Accordingly, the Court holds JPMorgan is entitled to judgment on the pleadings as to Jones's claim for JPMorgan's failure to obtain a final accounting in its capacity as guardian.

### IV. WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

As with JPMorgan's motion, Wells Fargo's asserts primarily that Jones's claims are time barred. Jones pleads the discovery rule and argues it preserves his claims.

### A. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense.  *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).  Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Jones Asserts Claims that Are Time Barred

**1. Jones's Claim for Improper Payment of Legal Fees is Time Barred.** – Jones alleges Wells Fargo breached its fiduciary duty by using trust funds to pay for its legal expenses incurred in attempting to terminate the House Trust, and for JPMorgan's legal fees incurred in litigating against Jones in Midland County. Jones alleges he did not discover these claims until 2009, when he received documents demonstrating alleged double billing, and when he came to understand that the legal expenses were being paid for litigation against him, not on his behalf. Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 25–26 [66].

Wells Fargo presents evidence of correspondence that put Jones on notice of these claims prior to March 28, 2009. Wells Fargo provided Jones with annual financial statements for the 1988 Trust and the House Trust that provided details on expenditures from the trust accounts. App. Supp. Wells Fargo Second Mot. Summ. J. ("Wells Fargo's App.") Ex. A ¶ 2. Jones's account statement for the year 2007 lists cash disbursements paid to Cotton, Bledsoe, Tighe & Dawson ("Cotton Bledsoe") for "termination of trust." *Id.* Ex. B at 8–9. Cotton, Bledsoe, Tighe & Dawson represented Wells Fargo in the suit to terminate the House Trust. *See* Wells Fargo Second Mot. Summ. J. 8. Jones does not contest that he received these account statements. Upon receipt of his 2007 annual account statement, Jones was thus on notice of facts that at minimum would have lead a reasonable person to investigate the use of trust funds to pay for the legal fees of his adversaries. Accordingly, Jones's claims based on Wells Fargo's use of trust funds to pay its own and JPMorgan's legal fees are time barred.

*2. Jones's Claim for Refusal to Expend Trust Funds/Refusal to Combine Trust Funds Is Time Barred.* – Jones alleges Wells Fargo breached its fiduciary duty from 2001 to 2010 by falsely claiming it lacked the available trust funds to expend on Jones's behalf. FAC ¶ 75. Wells Fargo provided annual account statements showing Jones the value of his trust accounts. Wells Fargo's App. Ex. A ¶ 2. Thus, if Jones felt, based on his account statements, that Wells Fargo was falsely claiming it had insufficient funds to spend on his behalf, he could have brought a claim when the alleged misrepresentations were made. Jones's receipt of account statements gave him all the information he needed to pursue a claim for false statements as to the value of the trust funds.

In his response, Jones asserts that he did not become aware until the House Trust Termination trial that his trusts had provisions that would have allowed them to be combined in certain circumstances. FAC ¶¶ 76–77. However, any injury resulting from Wells Fargo's failure to explicitly apprise Jones of this option was not inherently undiscoverable. Jones was provided with copies of his trust contracts, and otherwise could have requested a new copy of the contract at any time. Wells Fargo's App. Ex. A ¶ 7. Jones does not contend that the provisions of his trust contract were somehow secrets that he could not ascertain through reasonable diligence. The availability of the option to combine trusts was thus simply not inherently undiscoverable and the discovery rule does not apply to claims based on this conduct.

*3. Jones's Claim For Failure to Pursue Litigation Against JPMorgan Is Time Barred.* – Jones alleges Wells Fargo breached its fiduciary duty by failing to pursue litigation

against JPMorgan for JPMorgan's various breaches during its tenure as trustee.  *See* FAC ¶

95.  In order to preserve this claim, Jones alleges Wells Fargo fraudulently concealed this

claim from him.  *See* Pl.'s Resp. Wells Fargo's Second Mot. Summ. J. 18–20.  Jones's

evidence of fraudulent concealment consists solely of a letter he received from a Mr. Michael

Tandy[7] on February 13, 2003.  The letter was a response to Jones's inquiry into Wells

Fargo's pursuit of claims against JPMorgan, Pl.'s App. 3–4.  The body of the letter reads as

follows:

> Dear Mr. Jones:
>
> Thanks for your letter of the 4th of February.  As I have been led to understand, there are a couple of motions sitting in the Court here in Midland. Until the Judge rules on these, we would have no need to even think about any additional motions or lawsuits.  As I understand it, the Judge can rule in favor of your motion, or-rule that he is making no decision and allow the issues to be tried in Court.  We await the out come [sic] of these motions.
>
> Very truly yours,
>
> Michael J. Tandy

Pl.'s App. 016.

"Fraudulent concealment is an equitable doctrine that provides an affirmative defense

to the plea of limitations."  *Hay v. Shell Oil Co.*, 986 S.W.2d 772, 778 (Tex. App. – Corpus

Christi 1999, pet. denied).  On a motion for summary judgment, the nonmovant bears the

burden of raising a fact issue on fraudulent concealment.  *Id.*  "To defeat summary judgment

based on fraudulent concealment, the non-movant must establish: (1) an underlying tort, (2)

---

[7]Michael Tandy served as a trust officer for Wells Fargo during Wells Fargo's tenure as trustee.  Pl.'s App. 3–4 [67].

ORDER – PAGE 23

the movant's knowledge of the tort, (3) the movant's use of deception to conceal the tort, and (4) the non-movant's reasonable reliance on the [deception]." *Id.* (citing *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App. – Fort Worth 1997, pet. denied)).

Jones's reliance on Tandy's letter fails to establish the elements of fraudulent concealment. First, as of the date Tandy sent the letter, Wells Fargo had not necessarily committed any tort by failing to pursue claims against JPMorgan. There could have been perfectly good reasons for Wells Fargo to wait for Jones's then-ongoing litigation with JPMorgan to conclude before filing suit against JPMorgan. Second, even were the Court willing to conclude Wells Fargo had committed a tort by failing to sue JPMorgan as of February 2003, Tandy's letter does not indicate Wells Fargo was aware it was committing a tort, and it certainly does not indicate deception. Tandy's letter did not suggest an indefinite waiting period, but stated expressly that once a set of motions had been decided, next steps could be considered. Instead of monitoring the motions and following up with Wells Fargo, Jones waited over eleven years to bring his claim against Wells Fargo in this action. Jones fails to establish the elements of fraudulent concealment, and the Court thus holds his claims based on Wells Fargo's failure to pursue litigation against JPMorgan are time barred.

***4. Jones's Claim Based on an Alleged Conflict of Interest Is Time Barred.*** – Jones asserts that Wells Fargo was subject to a conflict of interest when it used the same law firm in the House Trust Termination Litigation trial that had previously represented JPMorgan. FAC ¶ 92. However, the House Trust Termination trial began in 2007, and Jones received

notice in his 2007 trust account statement that the firm Cotton Bledsoe was representing Wells Fargo.  Wells Fargo's App. Ex. B. at 9.  Jones was accordingly on notice of what firm was representing Wells Fargo when the House Trust Termination Suit began in 2007.  Notably, Jones does not contest these assertions in his response to Wells Fargo's motion.  Accordingly, the Court holds Jones's claims based on a conflict of interest arising from Wells Fargo's retention of Cotton Bledsoe in the House Trust termination suit are time barred.

*5. Jones's Claims for Failure to Expend Trust Funds to Repair the House Are Time Barred.* – Jones asserts Wells Fargo breached its fiduciary duty by forcing Jones to turn over his personal insurance proceeds to Wells Fargo and then failing to use those proceeds to repair damage to the House caused by a lightning strike and a mold problem.  FAC ¶¶ 41–47.  The insurance proceeds were deposited into Jones's trust account on October 25, 2005.  Wells Fargo's App. Ex F. at 7 [57-8].  Any claim for Wells Fargo's forcing Jones to deposit the insurance proceeds and then failing to expend them to repair the house accrued at that time.  There is simply nothing inherently undiscoverable about Wells Fargo's alleged failure to expend the insurance proceeds.  Jones was perfectly aware of facts and circumstances at the time of his deposit to monitor whether Wells Fargo used the insurance proceeds for their proper purpose, and to then bring a claim if they did not.  The discovery rule does not apply to the alleged failure to spend the insurance proceeds, and the Court holds claims arising from such conduct are time barred.

Jones also asserts that in addition to not spending the insurance funds for their proper purpose, Wells Fargo never returned the funds to Jones when the trusts terminated and this

claim did not accrue until March 30, 2009. FAC ¶¶ 47. Wells Fargo is entitled to summary judgment as to this claim because Jones presents no evidence to support it. Upon termination of the trust, Wells Fargo distributed the account balance of approximately $101,660.00. Wells Fargo App. Ex. G at 3. In response, Jones argues that despite this disbursement, Wells Fargo fails to demonstrate the money attributable to the insurance payout was part of the final disbursement. *See* Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 30–31. Jones presents only his own affidavit in support of his contention that Wells Fargo somehow segregated the insurance proceeds and then kept them instead of returning them when the trusts terminated. *See* Pl.'s App. 015. This is precisely the kind of "conclusory allegation[], speculation, and unsubstantiated assertion[]" that the Court is under no obligation to consider on a motion for summary judgment. *Douglass*, 79 F.3d at 1429. Jones gives the Court absolutely no reason to believe the insurance proceeds were not returned along with the rest of the balance of the trust account, and the Court therefore holds Wells Fargo is entitled to summary judgment to claims based on this allegation.

### 6. Jones's Claim for Failure to Convey Oil and Gas Producing Properties Is Time Barred. –

As discussed above, Jones has been litigating JPMorgan's failure to convey title to various oil and gas producing properties since February 17, 2000. *See supra* Subpart III.B.2. Jones was at that point on notice that his trustees may have failed to convey interests to oil and gas producing properties. Jones asserts he has been entitled to these interests since 1996. Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 31–32. Accordingly, as with the same

claim asserted against JPMorgan, the Court holds this claim is time barred and grants Wells Fargo's motion for summary judgment.

### C. Wells Fargo Is Entitled to Summary Judgment on Additional Claims

In addition to the time-barred claims discussed above, Jones asserts a number of additional claims on which Wells Fargo is also entitled to summary judgment.

### 1. Wells Fargo Is Entitled to Summary Judgment on Jones's Claims for General Mismanagement of Trust Assets.

– Jones alleges Wells Fargo mismanaged the cost basis of stocks held by the trusts and that it generally mismanaged the trusts' assets. *See* FAC ¶¶ 91, 96–99; Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 21–22. As to the claim based on mismanagement of the cost basis of stocks, the Court finds Jones presents insufficient evidence to support his claim. Jones's evidence consists of a series of emails exchanged between Jones, Wells Fargo, and Jones's stock broker, Charles Schwab. *See* Pl.'s App. 471–474. At worst, the emails tend to show that there was some confusion between the parties as to whether Wells Fargo had provided cost basis information to Charles Schwab when it transferred Jones's trust assets. There is no indication of malfeasance, of how long beyond the final email the problem went uncorrected, or of what damages Jones suffered as a result of the alleged omission. Even viewing these emails in a light most favorable to Jones, Jones has failed to present evidence of damages sustained as a result of Wells Fargo's failure to provide the cost basis information. Accordingly, the Court grants Wells Fargo's motion for summary judgment as to this claim.

In addition to the more particular claims of mismanagement, Jones also asserts a claim for mismanagement of trust assets based exclusively on the decline in value of the House and the cash balance in the House Trust. *See* Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 21–22. Jones fails to present any evidence of specific incidences of mismanagement, instead asserting a kind of *res ipsa loquitur* theory to support his claim. The Court finds this insufficient. The value of the House and the cash assets held in the House Trust could have declined for any number of reasons unrelated to Wells Fargo's competence as trustee. Without more particular allegations or evidence pertaining to how Wells Fargo mismanaged the assets, the Court finds this claim insufficient and grants Wells Fargo summary judgment.

### 2. Wells Fargo Is Entitled to Summary Judgment as to Jones's Claim for Partiality.

– Jones alleges Wells Fargo acted unfairly by favoring the trust account held by Angela Militello, a co-beneficiary of Jones's. Jones presents evidence that Militello's and Jones's trust accounts were invested in different categories of investments and Militello's accounts increased in value while Jones's decreased. *See* Pl.'s App. Ex. DD at 2–3, Ex. EE at 2–3. However, as Jones acknowledges, a substantial reason for the difference in investments is due to Jones's request that JPMorgan, the initial trustee, purchase the House, which accounted for 87.60% of Jones's investment profile. *See* FAC ¶ 21; Pl.'s Resp. Wells Fargo Second Mot. Summ. J. 23. Jones's remaining evidence is insufficient to establish a cause of action for favoritism of Militello. As with Jones's claims for general mismanagement of assets, there are a myriad of reasons why Militello's accounts might have grown while Jones's did not. Jones's evidence does not support a reasonable inference that Wells Fargo

was partial towards Militello's accounts to the detriment of Jones's. Accordingly, the Court holds Wells Fargo is entitled to summary judgment on Jones's claim for favoritism.

### D. Wells Fargo Is Not Entitled to Summary Judgment as to Jones's Claim for Nonsuiting the Bastrop County Litigation

Wells Fargo argues it is entitled to summary judgment on Jones's claim for nonsuiting the Bastrop County litigation. Wells Fargo asserts the claim is time barred because Wells Fargo provided notice to Jones before March 2009 that it did not wish to pursue the claims at issue in the Bastrop litigation. *See* Wells Fargo Second Mot. Summ. J. 11–12 (citing Wells Fargo App. Ex. A ¶ 9). However, Wells Fargo does not provide any evidence of what exactly it told Jones such that Jones should have been aware Wells Fargo would not be pursuing the litigation any further. Indeed, the litigation continued and Wells Fargo did not nonsuit the case until April 15, 2009, within the four year limitations period for breach of fiduciary duty, breach of contract, and violation of the trust code. Accordingly, the Court holds Wells Fargo fails to carry its burden in demonstrating Jones cannot recover on these claims based on the Bastrop County nonsuit.

### CONCLUSION

The Court grants JPMorgan's motion for judgment on the pleadings in its entirety. The Court denies Wells Fargo's motion for summary judgment as to Jones's claims for breach of fiduciary duty, breach of contract, and violation of the Texas Trust Code based on nonsuiting the Bastrop County Litigation. The Court grants Wells Fargo's motion in all other regards. Because Jones has already been granted leave to replead his claims once, the Court denies him another opportunity to do so.

Signed April 15, 2015.

David C. Godbey
United States District Judge